UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
PIKEVILLE

| | | |
|---|---|---|
| TRENA TAYLOR, | ) | |
| | ) | |
| Plaintiff, | ) | Civil No. 14-77-ART |
| | ) | |
| v. | ) | |
| | ) | |
| DOLLAR GENERAL CORPORATION, | ) | **MEMORANDUM OPINION & ORDER** |
| | ) | |
| Defendant. | ) | |
| | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

Plaintiff Trena Taylor, a former manager at Dollar General, claims that she was fired because of her age.  In support, Taylor points to a discriminatory policy expressed by her regional director, who said that Dollar General was "getting rid of older" employees.  Dollar General has moved for summary judgment, arguing that Taylor has not identified evidence of age discrimination sufficient to survive summary judgment.  The statement from the regional director, however, is adequate circumstantial evidence to defeat Dollar General's motion for summary judgment.

## BACKGROUND

On summary judgment, the Court considers the facts in the light most favorable to Taylor as the nonmoving party.  *See Moldowan v. City of Warren*, 578 F.3d 351, 374 (6th Cir. 2009).  In 1996, Taylor started working at Dollar General as a store clerk.  R. 42-1 at 23 (Taylor Deposition).  Several years later, Dollar General promoted Taylor to store manager of its Elkhorn City location.  *Id.*  As store manager, Taylor supervised up to 11 employees and was responsible for the store's day-to-day operations.  *Id.* at 25; R. 42-5 at 10

(Woodward Deposition). During her tenure, the store received several performance-related awards. R. 42-3 at 21–31 (Second Taylor Deposition). According to Taylor, weekly operating statements showed that her store was the top store in her district. *Id.* at 30; *see also id.* at 31 (stating that a representative from Dollar General's corporate office noted that her store was in the top 400 in the nation).

Pursuant to the corporate chain of command at Dollar General, store managers like Taylor report to a district manager. R. 42-1 at 37; R. 42-4 at 14 (Dear Deposition). District managers, in turn, report to a regional director. R. 42-1 at 40; R. 42-4 at 13. Taylor had several district managers, but only two are relevant here. From December 2012 until July 2013, Taylor reported to Marty Parsons. R. 41-8 ¶ 2 (Parsons Affidavit). From July 2013 until her termination, Taylor reported to John Woodward. R. 42-1 at 38; R. 42-5 at 6. Woodward reported to Steve Dear, the regional director for that district. R. 42-5 at 21.

On November 5, 2013, Woodward, acting on instructions from Dear, fired Taylor after she fell victim to a phone scam and improperly activated several prepaid debit cards. The phone scam occurred four days earlier, when Taylor received a call from an individual who said he was an employee from Dollar General. R. 42-1 at 165; R. 42-2 at 55; R. 42-6 at 40. He asked Taylor to activate six prepaid cards, add $499.95 to each card, and provide him with the account numbers of the cards. R. 42-1 at 178–79, 183. Taylor followed his instructions. While activating the cards, and after being on the phone for between 10 and 20 minutes, Taylor determined that the caller was not from Dollar General. *Id.* at 183–85. Taylor hung up and attempted to reverse course by canceling the transactions. She was partially successful, but was unable to void approximately $1,000 of the transactions. *Id.* at 99, 178–79.

Taylor then called the prepaid card company in another, ultimately futile, effort to void the transactions. *Id.* at 94–95. She estimates that she spoke with the company for approximately 20 minutes. *Id.* at 99. After that call, Woodward called, and they discussed the phone scam. *Id.* Once Taylor finished talking with Woodward, she received a call from Phillip Bramblett, the loss prevention manager for her region. *Id.* at 100. Bramblett asked Taylor why she activated the cards, and she told him that "she just wasn't thinking." R. 42-6 at 40. Taylor acknowledged that none of the conversations with Woodward and Bramblett involved her age. R. 42-1 at 102.

According to Bramblett's deposition, he was alerted to the scam upon receiving an email from the Dollar General fraud department earlier that day notifying him of the activation of a "substantial number" of prepaid cards. R. 42-6 at 35. After receiving this information, Bramblett testified that he tried to call Taylor for about 30 minutes but could not reach her. *Id.* at 36. He then called her district manager—Woodward—and relayed the information to him. *Id.* At his deposition, Woodward explained that he received a call from Bramblett and then immediately began calling the store. R. 42-5 at 18–19. He reached Taylor less than 30 minutes after he started calling. *Id.* at 19.

The next day Woodward visited Taylor at the store. R. 42-1 at 100. According to Taylor, Woodward said she would keep her job. *Id.* at 101. Three days later, however, Woodward came to the store again and told Taylor she was fired. *Id.* at 142–43. Both Woodward and Dear testified that Dear, the regional director, had instructed Woodward to fire Taylor. R. 42-4 at 20; R. 42-5 at 21. Dear explained that the reason for the termination was a failure to protect company assets. R. 42-4 at 20.

# DISCUSSION

A court may grant summary judgment only where there are no genuine disputes of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). On summary judgment, the court must "draw all reasonable inferences in favor of the non-moving party." *Scheick v. Tecumseh Pub. Sch.*, 766 F.3d 523, 529 (6th Cir. 2014). A genuine dispute of material fact exists where there is "evidence on which the jury could reasonably find for the plaintiff." *Id.* (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986)).

The Kentucky Civil Rights Act ("KCRA") prohibits discrimination based on age, against individuals age forty and over, in hiring, firing, and other employment decisions. Ky. Rev. Stat. § 344.040(1)(a). Claims of age discrimination under the KCRA are "analyzed in the same manner" as claims under the Age Discrimination in Employment Act (ADEA). *Allen v. Highlands Hosp. Corp.*, 545 F.3d 387, 393 (6th Cir. 2008); *Johnson v. Lockheed Martin Corp.*, 598 F. App'x 364, 368 (6th Cir. 2015). Under the ADEA, a plaintiff may prove her claim through either direct or circumstantial evidence. *Allen*, 545 F.3d at 394. Taylor contends that she can defeat summary judgment through either path.

## I.     Direct Evidence

Direct evidence is evidence that, if believed, requires no inference to prove the existence of a fact. *Scheick*, 766 F.3d at 530 (citing *Rowan v. Lockheed Martin Energy Sys., Inc.*, 360 F.3d 544, 548 (6th Cir. 2004)). After *Gross v. FBL Financial Services, Inc.*, 557 U.S. 167 (2009), direct evidence under the ADEA "requires the conclusion that age was the 'but for' cause of the employment decision." *Scheick*, 766 F.3d at 530 ("[T]he inquiry includes both a predisposition to discriminate and that the employer acted on that

4

predisposition."). Examples of direct evidence include "a facially discriminatory employment policy or a corporate decision maker's express statement of a desire to remove employees in the protected group." *Nguyen v. Cleveland,* 229 F.3d 559, 563 (6th Cir. 2000).

Taylor argues that several statements, all to the effect of "Dollar General is getting rid of older employees," constitute direct evidence. *See* R. 42 at 20–23. She points to statements from Dear and her former district manager, Marty Parsons. Dear and Parsons deny making such statements. *See* R. 42-4 at 55–56; R. 41-8 ¶ 5.[1] Instead, Taylor offers these statements through her own deposition testimony and the deposition testimony of Amanda Magliaro, a former Dollar General store manager. Accordingly, two questions arise about this evidence: (1) whether the statements are inadmissible hearsay and (2) whether the statements are direct evidence.

### a.   *Double-Hearsay Statement from Dear to Parsons*

Magliaro testified at her deposition that, in "mid October" 2013, Parsons told her that Dear had told him that "they were going to get rid of the older people in the company." R. 42-9 at 6; *id.* at 6–7 (stating, in a follow-up question, that Dear told Parsons that "they were getting rid of all the older employees in the company"). Viewed in the light most favorable to Taylor, the statement that "they were going to get rid of the older people in the company" refers to a Dollar General plan to fire older employees. At the time of the statement, Parsons was Magliaro's district manager and Dear was Parsons' regional director. *Id.* at 5–6.

---

[1] Taylor contends that Parsons' affidavit is inadmissible because Dollar General did not include Parsons in its initial disclosures. But Taylor did include Parsons in her initial disclosures. R. 45-1. Thus, Parsons was known to Taylor and Dollar General's failure to disclose Parsons is harmless. *See* Fed. R. Civ. P. 26(e)(1) (requiring supplementation where "the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing"); Fed. R. Civ. P. 37(c)(1) (explaining that a party may not use information or witness who was not disclosed properly unless the failure to disclose was "substantially justified" or "harmless").

Before addressing whether Magliaro's testimony is direct evidence, the Court must first determine whether her testimony is admissible. *See Back v. Nestle USA, Inc.*, 694 F.3d 571, 576 (6th Cir. 2012). Magliaro's testimony contains two levels of hearsay: the statement by Dear to Parsons and the statement by Parsons to Magliaro. Each statement must be independently admissible. Fed. R. Evid. 805.

Dear's statement to Parsons is admissible as either non-hearsay or as "not hearsay" under Federal Rule of Evidence 801(d)(2)(D). Discriminatory statements are often admissible as non-hearsay because they are offered to show the declarant's state of mind or that the statements were made, but not for their truth. *See Jacklyn v. Schering-Plough Healthcare Prods. Sales Corp.*, 176 F.3d 921, 927 (6th Cir. 1997). Under that view, the statement from Dear about getting rid of older workers would be admissible to show his state of mind or as evidence that he made a discriminatory statement. But even if the statement is offered for its truth and considered hearsay, it would fall under a hearsay exception. Rule 801(d)(2)(D) applies to statements "made by the party's agent or employee on a matter within the scope of that relationship and while it existed." Fed. R. Evid. 801(d)(2)(D). Dear was involved in the hiring and firing of both district managers and store managers. *See* R. 41-1 at 7 ("The regional director possesses ultimate authority on the decision to separate a store manager."); R. 42-4 at 13–14 ("[M]y role is to supervise and lead a team of district managers."). The termination policy of Dollar General employees, such as store managers, was within the scope of Dear's employment. *See Back*, 694 F.3d at 477. Accordingly, Dear's statement to Parsons is admissible—even if used to prove the truth asserted in the statement.

Dollar General contends that Dear's statement is not admissible because Magliaro is not a trustworthy source. R. 41-1 at 27. Dollar General relies on *Back v. Nestle USA, Inc.*, where the Sixth Circuit faced a double-hearsay situation involving an original declarant who was unidentified. The plaintiff, Back, alleged age discrimination. 694 F.3d at 573. As part of his case, James Hagerman, a co-worker, declared in an affidavit that "Tim Shelburne told me that he had been told by higher management that they were planning to get rid of the three oldest employees and highest paid team leaders." *Id.* at 574. Tim Shelburne was the Human Resources Director. *Id.* The court held that Shelburne's statement to Back was admissible under Rule 801 because hiring and firing were within the scope of his employment. *Id.* at 577. The statement from "higher management" to Shelburne, however, was inadmissible because Back had no evidence "that the unidentified declarants were speaking on a matter within the scope of their employment." *Id.* at 578.

In analyzing the statement from "higher management," the court looked to the trustworthiness of the speaker—Hagerman—because the original declarant—"higher management"—was unidentified. *Id.* ("Outside evidence sufficient to satisfy 801(d)(2)(D)'s scope requirement could come from the 'circumstances surrounding the statement, such as the identity of the speaker [or] the context in which the statement was made.'" (quoting Fed. R. Evid. 801 advisory committee notes, 1997 Amendment)). The court concluded that Hagerman's position "does not grant any greater assurance of trustworthiness" because he held the same position as Back and was "not ordinarily expected to be privy to a plan to terminate." *Id.* *Back* stands for the proposition that the trustworthiness of the speaker is relevant in determining whether an unidentified declarant's statement is within the scope of that declarant's employment.

But, here, neither declarant is unidentified.  According to Magliaro, Dear made the statements to Parsons, and Parsons made the statements to Magliaro.  Dear and Dollar General admit that Dear has a role in firing store managers and that he instructed Woodward to fire Taylor.  *See, e.g.*, R. 41-1 at 7.  That evidence establishes that his statement (if offered for the truth of the matter asserted) is within the scope of his employment.  Rule 801(d)(2)(D) requires no more.

The next step in the hearsay chain is the admissibility of Parsons' statement to Magliaro.[2]  Here, Parsons was also speaking on a matter within the scope of his employment.  As all parties acknowledge, the district manager plays a role in the hiring and firing of the store managers.  *See* R. 42-5 at 6 (Woodward Deposition) ("I'm part of the process of hiring store managers."); *id.* at 7 (describing the district manager  as "a partner" in termination decisions of store managers); R. 42-4 at 14 (Dear Deposition) (explaining that "[t]he district manager is responsible for" rating individual store managers).  Because district managers are involved in the termination process of store managers, the details of relevant termination policies, when given to employees under their supervision, concern a matter within the scope of employment.  Consider, for example, if Dollar General implemented a new policy that no store manager could have more than one unexcused absence each year.  The district manager, as the individual most directly responsible for the store managers, would likely communicate that new policy to his store manager.  *See* R. 42-5 at 6 (Woodward Deposition) (stating that

---

[2] Dollar General argues that Taylor forfeited any response to its argument that Parsons' statements are hearsay. R. 45 at 6.  While Taylor did not make a detailed argument, she does contend (in addition to laying out the relevant law) that the statements are admissible because Dear and Parsons had "personnel responsibility, the store manager as to employees of the store, the District Manger as to store managers and the Regional Manager as to District Managers." R. 42 at 23.  Similarly, she argues that statements from Parsons "concern decision making processes into which Marty Parsons had input and decisions to which he would have been a party."  *Id.* at 22.  Those arguments constitute a response.

duty of district manager is "communication with company processes and ensure that the stores are following that"); *id.* at 16 (explaining that he told his store managers to avoid activating cards over the phone).  In this case, Parsons relayed to Magliaro details about an age-based firing policy from Dear—still reading, of course, the facts in the light most favorable to Taylor.  As the individual in charge of store managers who would play some role in their terminations, Parsons would be authorized to discuss a termination policy with Magliaro, one of the store managers under his command.  *See Grizzell v. City of Columbus Div. of Police*, 461 F.3d 711, 722 (6th Cir. 2006) ("Rule 801(d)(2)(D) is designed to bind the employer where one of its managerial employees makes a statement within the scope of the employee's duties as a manager." (quoting *Barner v. Pilkington N. Am., Inc.*, 399 F.3d 745, 750 (6th Cir. 2005))).

As the Sixth Circuit held in *Back*, "there is no requirement that a declarant be directly involved in the adverse employment action" for the statement to come within Rule 801(d)(2)(D).  694 F.3d at 577 (citing *Carter v. Univ. of Toledo*, 349 F.3d 269, 275–76 (6th Cir. 2003)).  The statement must only "concern[ ] a matter within the scope of the declarant's employment."  *Id.*  In *Back*, the district court excluded the statement from Shelburne, the Human Resources Director, to Hagerman about what upper management told him because Shelburne played no role in Back's termination.  But the Sixth Circuit disagreed, describing the district court's interpretation of Rule 801(d)(2)(D)'s scope requirement as "too narrow."  *Id.*  Shelburne's Human Resources position involved "employee-performance issues generally and termination specifically."  *Id.*  Because Shelburne's statement relaying upper management's directive "relate[d] to terminating employees," it was "plainly within the scope of the Human Resources Director's job."  *Id.*; *see also Blair v. Henry Filters, Inc.*, 505

F.3d 517, 528 (6th Cir. 2007), *overruled on other grounds by Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167 (2009) (holding that a supervisor's statement that he needed a "younger sales force" was within the scope of employment because the supervisor had "authority to hire and fire salespeople").  Here, Parsons had the same authority, and conveyed a policy within that authority to Magliaro.  Other courts of appeals agree.  *See Talavera v. Shah*, 638 F.3d 303, 310 (D.C. Cir. 2011) ("In the employment discrimination context, the circuit courts of appeals have held that Rule 801(d)(2)(D) requires only that the declarant have some authority to speak on matters of hiring or promotion or that the declarant be involved in the decision-making process in general."); *Abrams v. Lightolier Inc.*, 50 F.3d 1204, 1216 (3d Cir. 1995) ("Where a supervisor is authorized to speak with subordinates about the employer's employment practices, a subordinate's account of an explanation of the supervisor's understanding regarding the criteria utilized by management in making decisions on hiring, firing, compensation, and the like is admissible against the employer."); *see also* Mueller & Kirkpatrick, 4 Federal Evidence § 8:55 (4th ed.) ("The exception also reaches accounts of company practices or policies if the speaker is responsible for creating or implementing these policies, including policies relating to hiring, promotion, transfer, firing or other aspects of employment.").

Despite the above case law, Dollar General nonetheless argues that Parsons' statements to Magliaro are inadmissible because Parsons had no role in Taylor's termination.  *See* R. 41-1 at 24–27 (citing *Jacklyn*, 176 F.3d at 927–28).  In *Jacklyn*, the plaintiff, Carol Jacklyn, sued her employer for sex discrimination, alleging that, in April 1994, she was constructively discharged.  176 F.3d at 923.  The hierarchy of Jacklyn's company mirrored Dollar General's structure:  Jacklyn reported to a district manager, who in turn reported to a

10

regional manager.  And, like here, Jacklyn's district managers changed over the course of her employment.  *Id.* at 924.  Jacklyn claimed that hearsay statements from her regional manager and district manager were direct evidence of discrimination.  In her affidavit, Jacklyn stated that Larry Grewe, who had been her district manager from 1984 to 1990, told her that he heard the regional manager, Dean Erlandson, say that he did not want "any skirts working for him."  *Id.* at 926.  She also stated in her affidavit that Joseph Drake, who was her district manager from 1991 to 1993, opined that her problems with Erlandson were because she was the only woman working for Erlandson.  *Id.* at 926–27.

The Sixth Circuit held that both statements were inadmissible.  *Id.* at 927.  The statement from Grewe to Jacklyn about what Erlandson said contained two levels of hearsay.  The court acknowledged that Erlandson's statement to Grewe was not hearsay, but concluded that Grewe's statement to Jacklyn was inadmissible hearsay.  *Id.*  Grewe was not Jacklyn's manager when Erlandson took over as regional manager.  *Id.* at 928.  Consequently, Grewe "was not involved in in any of the critical appraisals of her performance that preceded her leaving work in April 1994."  *Id.*  Because Grewe was no longer supervising Jacklyn, Grewe's statements to Jacklyn about Erlandson did not concern a matter within the scope of Grewe's employment.

As to the statement from Drake to Jacklyn, which was only single hearsay, that statement was made sometime between 1992 and July 1993—almost a year before Jacklyn left.  While "Drake was involved in supervising plaintiff and evaluating her performance after Erlandson set out the changing expectations for plaintiff," he was not involved in the "actions that plaintiff claims led to her constructive discharge."  *Id.* at 928.  The Sixth Circuit reiterated that the "test is whether the statement *concerns* a matter within the scope of the

agency or employment." *Id.* (emphasis in original).  The actions that, according to Jacklyn, led to her discharge were actions related solely to Erlandson.  Drake, however, was merely giving his own opinion about the problems between Jacklyn and Erlandson.  Accordingly, his statements were not within the scope of his employment.

In discussing Parsons' statement to Magliaro, Dollar General analogizes to *Jacklyn*, insisting that the Parsons' statement is inadmissible because Parsons was not Taylor's supervisor and was not involved in her discharge.  Dollar General is correct that Parsons was not Taylor's supervisor and had no role in the discharge.  That fact, however, does not make his statement to Magliaro inadmissible.  Unlike Grewe in *Jacklyn* (who was no longer Jacklyn's supervisor at the time he made the statement), Parsons was Magliaro's supervisor, and thus his statements to her about Dollar General's employment policies were within the scope of employment.  And the statement from Drake to Jacklyn is of a completely different character than the statement from Parsons to Magliaro.  Drake told Jacklyn his belief as to why Erlandson did not like her—reasons that were specific to Jacklyn and did not identify a broader policy of the employer.  Because Drake was not involved in the claims leading to her discharge, such statements were not within the scope of his employment.

Parsons' statement to Magliaro, however, did not relate specifically to Taylor. Instead, Parsons conveyed a broad statement from Dear expressing a policy to get rid of older workers.  Viewed in the light most favorable to Taylor, that statement applied to all older workers, including those store managers for whom Parsons was responsible.  Due to the breadth of Dear's statement, it came within the scope of Parsons' employment. *See Back*, 694 F.3d at 577; *Carter v. Univ. of Toledo*, 349 F.3d 269, 275 (6th Cir. 2003) (explaining that the scope of employment "extends beyond direct decision-makers").

12

The next question is whether Dear's statement is direct evidence.  Courts look to the following factors in assessing whether a statement qualifies as a direct evidence: "(1) whether the statements were made by a decision-maker or by an agent within the scope of his employment; (2) whether the statements were related to the decision-making process; (3) whether the statements were more than merely vague, ambiguous or isolated remarks; and (4) whether they were made proximate in time to the act of termination."  *Peters v. Lincoln Elec. Co.*, 285 F.3d 456, 478 (6th Cir. 2002).

Dear was the regional director and gave the instruction to terminate Taylor.  R. 42-4 at 20.  Dollar General does not dispute that he was a decision-maker.  R. 41-1 at 7 ("District managers partner with Dollar General's loss prevention department, human resources department or regional director when processing the separation of a store manager."); *id.* ("The regional director possesses ultimate authority on the decision to separate a store manager.").

Even though Dear was a decision-maker, the record is devoid of any evidence as to the timing or context of the discriminatory remark.  While Magliaro testified that Parsons told her about Dear's statement in October 2013, Magliaro did not include any information about when Dear told Parsons.  Parsons' statement to Magliaro similarly lacked any details about the setting in which Dear made the statement.  For example, Dear may have expressed this statement at a meeting about terminating store managers or at a meeting about the store softball team.  Without further context connecting the statement to Taylor's termination, the statement is not direct evidence.

*Blair v. Henry Filters, Inc.*, not cited by either party, is almost directly on-point. There, an employee testified that he heard the plaintiff's supervisor say that he "needed a

younger sales force."   505 F.3d at 527.   The employee overheard this statement approximately three months before the plaintiff's termination.   After concluding that the evidence was admissible hearsay, the court held that it was not direct evidence.   Even though the discriminatory statement reflected "a desire to terminate" older employees, "neither the statement itself nor the context in which it was uttered directly indicate[d] that [the supervisor] was speaking of [the plaintiff] specifically."   *Id.* at 528.   The employee did not testify that the supervisor mentioned the plaintiff's name in connection with this discriminatory statement, and thus an inference was required "to connect" the supervisor's "general desire for a younger workforce with [the plaintiff]'s termination."   *Id.*   Because an inference was needed, the discriminatory statement was not direct evidence.   *Id.*

Dear's statement suffers from similar defects.   "Neither [Dear's] statement nor the context in which it was uttered directly indicates" that Dear was speaking about Taylor.   *Id.* And there is no indication that Dear "intended to fire" Taylor because of his previously expressed discriminatory view.   *Id.*   Just as in *Blair*, Dear's statement is not direct evidence. *Id.   But see Scott v. Potter*, 182 F. App'x 521, 526 n.3 (6th Cir. 2006) (distinguishing Seventh Circuit case in which supervisor told employee that their "plan was to get rid of older carriers and replace them with younger, faster carriers," *Ezell v. Potter*, 400 F.3d 1041, 1051 (7th Cir. 2005), as "clearly direct evidence, as the statement facially exhibits a discriminatory animus against older workers").

### b.    Single-Hearsay Statements from Parsons

None of the remaining statements from Parsons are direct evidence of discrimination. Remarks from Parsons to Taylor, and from Parsons to Magliaro, while their respective district manager, cannot constitute direct evidence of discrimination because Parsons was not

involved in the decision to fire Taylor.  Taylor testified at her deposition that Parsons said to her that "Dollar General is going to get rid of all their older managers," but that it would not fire Taylor because she ran "too good of a store."  R. 42-1 at 77; *see also* R. 42-3 at 44–45 (explaining that Parsons told her "three, four times" about how Dollar General was "getting rid of older people").  Magliaro testified that Parsons had told her multiple times that Dollar General was getting rid of older employees.  R. 42-9 at 21.[3]  In assessing whether a statement is direct evidence, only those "statements . . . from decisionmakers . . . constitute evidence of discrimination."  *Geiger v. Tower Auto.*, 579 F.3d 614, 620–21 (6th Cir. 2009).  Parsons was not Taylor's district manager at the time of Taylor's termination.  *See* R. 42-1 at 90; R. 41-5 ¶ 5.  Indeed, Parsons had ceased serving as Taylor's district manager in summer 2013, approximately three months before her termination.  R. 41-8 ¶ 2.  The relevant parties in a store manager's termination are the store manager's district manager and regional director *at the time* of termination.  *See* R. 41-1 at 7; R. 42 at 10–11.  Parsons' statements were solely those of a "nondecisionmaker unrelated to the decisional process itself."  *Geiger,* 579 F.3d at 621.  Such remarks "cannot suffice to satisfy plaintiff's burden of demonstrating . . . animus."  *Id.*  Consequently, Taylor's and Magliaro's testimony regarding Parsons' statements about older employees is not direct evidence.

The preceding discussion applies equally to statements made by Parsons to Taylor in November 2013 after Parsons had resigned and Taylor was terminated.  *See* R. 42-1 at 75 (stating that Parsons said "the whole time I worked for Dollar General . . . all they talked about was getting rid of their older managers").  But those statements are also inadmissible hearsay.  The statements are offered for the truth of the matter asserted—that Dollar General

---

[3] To the extent Parsons' statements were not repeating what Dear said, they would be single hearsay.

was getting rid of older employees.  But, the only hearsay exception relied on by Taylor applies to statements by a party-opponent.  *See* Fed. R. Evid. 801(d)(2)(D).  An employee's statement is classified as one from a party-opponent only where the employee makes the statement within the scope of his employment.  *Id.*  Parsons, however, had already left his job with Dollar General in November 2013.[4]  Because he was no longer an employee of Dollar General, his statements could not be "within the scope" of his Dollar General employment and cannot be attributed to Dollar General.  As a result, the statements Parsons made after leaving Dollar General are inadmissible and cannot be considered direct evidence.

## II.     Circumstantial Evidence

While Taylor does not have direct evidence, she may still prove her case through circumstantial evidence.  Under the *McDonnell Douglas* framework, the plaintiff must first establish a prima facie case of age discrimination.  *See Geiger*, 579 F.3d at 622 (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)).  If the plaintiff succeeds, the burden of production shifts to the defendant to articulate a legitimate nondiscriminatory reason for the termination.  *See Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 350 (6th Cir. 1998).  If the defendant satisfies its burden, the plaintiff must show that the defendant's asserted reason is pretext.  *Id.*

To satisfy the elements of a prima facie case, Taylor must show that: (1) she was over the age of 40 when she was let go; (2) she suffered an adverse employment action; (3) she was qualified for her position; and (4) she was replaced by a younger worker.  *Rowan v. Lockheed Martin Energy Sys., Inc.*, 360 F.3d 544, 547 (6th Cir. 2004).

---

[4] Curiously, Taylor contends that Parsons "continued to be a District Manager when she talked to him . . . following her termination."  R. 42 at 25.  But in her deposition, Taylor testified that she talked to Parsons after he had left Dollar General and was working at O'Reilly Auto Parts.  *See* R. 42-1 at 73–74.

16

The parties do not dispute the first three requirements of the prima facie case. As to the fourth requirement, Dollar General misapprehends the nature of the showing. It contends that Taylor must show that "a similarly situated non-protected employee was treated more favorably." R. 41-1 at 10. The case Dollar General cites for that proposition, *Coomer v. Bethesda Hospital Inc.*, 370 F.3d 499, 510–11 (6th Cir. 2004), explains that the fourth prong requires a showing that, after the plaintiff "was rejected, a substantially younger applicant was selected" *or* "that similarly situated non-protected employees were treated more favorably." *Id.* The Sixth Circuit has made clear that the fourth prong may be satisfied so long as the plaintiff demonstrates either of those two standards. *See Clayton v. Meijer, Inc.*, 281 F.3d 605, 610 (6th Cir. 2002); *Douglas v. Eaton Corp.*, 577 F. App'x 520, 524 (6th Cir. 2014) (explaining that the fourth element requires a showing that the plaintiff "was replaced by someone outside the protected class *or* that [the defendant] treated similarly situated, nonprotected employees more favorably" (emphasis added)). Thus, in cases alleging discrimination in termination decisions, the plaintiff satisfies the fourth element where she was "replaced by a younger worker"—either one substantially younger or outside the protected class. *Rowan*, 360 F.3d at 547; *Geiger*, 579 F.3d at 622. Because Taylor testified that she was replaced by a 39-year-old individual, R. 42-3 at 40, she has met her burden.

Once the plaintiff establishes a prima facie case, the defendant must articulate a legitimate, nondiscriminatory reason for the plaintiff's termination. *See Harris v. Metro. Gov't of Nashville & Davidson Cty., Tenn.*, 594 F.3d 476, 485 (6th Cir. 2010). The defendant meets its burden of production by alleging that the "termination was the result of [ ] violation of company policy." *Tinker v. Sears, Roebuck & Co.*, 127 F.3d 519, 523 (6th Cir. 1997); *see also Allen v. Highlands Hosp. Corp.*, 545 F.3d 387, 396 (6th Cir. 2008). Dollar

17

General easily satisfies that requirement.  Dear testified that Taylor was fired because her activation of prepaid cards over the phone violated Dollar General's policy regarding protecting company assets.  R. 42-4 at 20.  Dear further testified that the failure to protect company assets was a terminable offense.  *Id.*  Indeed, Taylor admitted that she made a mistake when she activated the cards.  R. 42-1 at 194.  Because Dollar General has articulated a legitimate, nondiscriminatory reason, the burden shifts back to Taylor.

Taylor, however, contends that Dollar General has failed to satisfy its burden because its reason has no basis in fact.  That argument, however, conflates the second and third stages of the circumstantial-evidence framework.  *Allen*, 545 F.3d at 396 ("That [the plaintiffs] believe this proffered reason to be 'patently false' does not lead to the conclusion that the [defendant] failed to meet its production burden.").  All Dollar General must do is articulate a nondiscriminatory reason.  Taylor's argument "is more properly addressed at the pretext stage of the inquiry."  *Id.*

Moving to the pretext stage, Taylor may avoid summary judgment by producing "sufficient evidence from which the jury may reasonably reject the employer's explanation." *Manzer v. Diamond Shamrock Chem. Co.*, 29 F.3d 1078, 1083 (6th Cir. 1994), *overruled on other grounds by Geiger*, 579 F.3d at 621.  That is, the evidence must demonstrate that Taylor "suffered an adverse employment action under circumstances which gave rise to an inference of unlawful discrimination."  *Blair*, 505 F.3d at 532.  To meet that burden, Taylor must show that Dollar General's allegedly nondiscriminatory reason for the termination (1) had no basis in fact, (2) did not motivate the defendant's termination decision, or (3) was insufficient to warrant the termination.  *See Allen*, 545 F.3d at 396.

Taylor's primary argument is that Dollar General's justification for her termination lacked any factual basis. R. 42 at 34. That point of contention is a non-starter. To successfully demonstrate pretext due to an absence of a factual basis, Taylor could show that "the proffered bases for [her] discharge never happened." *Manzer*, 29 F.3d at 1084. But Taylor *admitted* the relevant underlying facts. She testified that she made a mistake and that her actions were wrong. R. 42-1 at 194 (Taylor Deposition) ("I made a mistake."), 220 ("I have to say it was wrong."), 221 ("You let your guard down, you wasn't [sic] performing the way you should have performed."). Additionally, she acknowledged that she would have accepted some punishment (albeit something less than firing). *Id.* at 90. Based on that testimony, and the depositions from Dear, Woodward, and Bramblett discussing the phone scam, Taylor does not demonstrate that her termination lacked a factual basis.

In the face of her own admissions, Taylor contends that the termination lacked a factual underpinning because her actions caused no losses. R. 42 at 34. *But see* R. 42-1 at 99 (explaining that "a thousand dollars" was not refunded). But Dollar General did not base its decision on the amount of loss. Dear testified that the amount of the loss would not have affected his decision and that the termination was due to a policy breach, "rather than having anything to do with a specific amount." R. 42-4 at 24. Taylor offers no other evidence suggesting that the amount of losses affected the decision to fire her.

As for the next two options for proving pretext, Taylor states: "[i]ntentional age discrimination was announced in the personnel chain of command, practiced in that chain of command, and inflicted on the Plaintiff in the most unjust manner." R. 42 at 36. A generous interpretation of Taylor's argument is that she is incorporating her previous discussion of Parsons' and Dear's hearsay statements as evidence of circumstantial evidence. That goes

only to the second method of showing pretext: that Dollar General's stated reasons for her termination did not actually motivate the decision.   The third route is inapplicable here because Taylor has no evidence that "other employees, particularly employees not in the protected class, were not fired even though they engaged in substantially identical conduct." *Manzer*, 29 F.3d at 1084.

Under the second method of demonstrating pretext, Taylor must show "circumstances which tend to prove that an illegal motivation was *more* likely than that offered by the defendant."   *Id.*   Taylor relies on the hearsay statements from Dear and Parsons.   Where discriminatory statements are "made by a person in a position to influence the alleged employment decision, they will be relevant unless they are so isolated and ambiguous as to be nonprobative."   *Diebel v. L & H Resources, LLC*, 492 F. App'x 523, 532–33 (6th Cir. 2012).   In assessing whether discriminatory statements are circumstantial evidence, courts look to "the identity of the speaker, the nature and substance of the comments, and the temporal proximity of the comments to the challenged decision."   *Griffin v. Finkbeiner*, 689 F.3d 584, 595 (6th Cir. 2012) (citing *Ercegovich*, 154 F.3d at 354–57).

Dear's statement about getting rid of older employees is sufficient circumstantial evidence.   As discussed with regard to direct evidence, Dear was a decision-maker in Taylor's termination.   His statement was not ambiguous: he expressed a discriminatory intent to fire older employees.   Additionally, taken in the light most favorable to Taylor, Magliaro testified that Parsons conveyed the discriminatory policy from Dear "several times."   R. 42-9 at 7.   And while the exact time and place of Dear's statement to Parsons is not evident from the record, Parsons last relayed that statement to Magliaro approximately two to three weeks before Taylor's termination.   *See id.*   Viewing the facts in the light most favorable to Taylor,

the close nature of the timing of Parsons' statement to Taylor's termination further supports the relevancy of the statement. *Cf. Hale v. ABF Freight Sys., Inc.*, 503 F. App'x 323, 335 (6th Cir. 2012) (explaining that, in a retaliation case, "suspicious timing is a strong indicator of pretext when accompanied by some other, independent evidence" (internal quotation marks omitted)). A reasonable jury could infer from the nature of the statement, Dear's position, and the timing of Parsons' statement to Magliaro that age was a but-for cause for Taylor's discharge.

Dollar General also contends that the discriminatory statements "could as easily be a reference to cutting salaries based on tenure with the company." R. 41-1 at 29. That is an argument that Dollar General is free to make at trial. At summary judgment, however, the Court views the facts in Taylor's favor. With that perspective, a statement about "getting rid of older" employees suggests age, not length of employment.

## CONCLUSION

Taylor has presented sufficient circumstantial evidence from which a jury could reasonably find that Dollar General discriminated against her because of her age. Accordingly, it is **ORDERED** that Dollar General's motion for summary judgment, R. 41, is **DENIED**.

This the 23rd day of June, 2015.



Signed By:

*Amul R. Thapar*

United States District Judge